UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SARAH WERTS,<br><br>                    Plaintiff,<br><br>          v.<br><br>KILOLO KIJAKAZI, Acting Commissioner<br>of Social Security,<br><br>                    Defendant. | Case No.   20-cv-03751-EJD<br><br>**ORDER GRANTING PLAINTIFF'S<br>MOTION FOR SUMMARY<br>JUDGMENT; DENYING<br>DEFENDANT'S MOTION FOR<br>SUMMARY JUDGMENT**<br><br>Re: ECF Nos. 18, 19 |

Plaintiff Sarah R. Werts ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) to obtain review of a final decision by the Commissioner of the Social Security Administration[1] denying her claim for Social Security Disability Insurance ("SSDI") benefits.  In a Motion for Summary Judgment, Plaintiff seeks an order reversing the decision and awarding benefits, or alternatively, remanding the action to the Commissioner for further administrative proceedings. ECF No. 18.  The Commissioner opposes Plaintiff's motion and seeks summary judgment affirming the decision denying benefits.  ECF No. 19.

Because the record reveals the Commissioner's decision is not supported by substantial evidence, Plaintiff's motion will be granted and the Commissioner's cross-motion will be denied.

I.      **BACKGROUND**

A.      **Procedural History**

Plaintiff applied for SSDI on October 24, 2016, alleging a disability beginning on January

---

[1] The current Acting Commissioner of Social Security, Dr. Kilolo Kijakazi, is automatically substituted as defendant in place of her predecessor.  Fed. R. Civ. P. 25(d).

8, 2016.  ECF Nos. 15-2–15-11, Transcript of Administrative Record ("Tr.") 197.  Plaintiff's claim was initially denied by the Commissioner on December 27, 2016.  *Id.* at 15, 71.  Plaintiff requested reconsideration of that decision, which was denied by the Commissioner on February 15, 2017.  *Id.* at 72–82.

Plaintiff subsequently requested a hearing before an administrative law judge ("ALJ"), which occurred before ALJ Wynne O'Brien-Persons on February 7, 2019.  Tr. 28–61, 97–98.  Plaintiff, represented by counsel, testified on her own behalf.  *See id.* at 31–32.  The ALJ also heard testimony from a vocational expert, Allison Baldwin.  *Id.* at 50–59.  In a written decision dated March 27, 2019, the ALJ ultimately found that Plaintiff was not disabled and had the residual functional capacity to perform "light work . . . except she can stand and/or walk for 4 hours in an 8-hour workday[,] would need to avoid concentrated noise and . . . repetitive head movements defined as constant movement . . . [and] would need to alternate positions every 30 minutes."  *Id.* at 18–21.

Plaintiff sought administrative review of the ALJ's determination on April 25, 2019.  Tr. 151–52; *see id.* at 7–11.  On April 6, 2020, the Appeals Council denied the request for review, and the ALJ's decision became the final decision of the Commissioner.  *Id.* at 1–6.  Plaintiff then commenced this action, and the instant summary judgement motions followed.

**B.     Plaintiff's Personal, Vocational, and Medical History**

According to her application for benefits, Plaintiff was born on January 3, 1973, and was 46 years old at the time of the hearing.  Tr. 28, 197.  She holds master's degrees in psychology and business administration.  *Id.* at 258.  From August 2000 to October 2010, Plaintiff was a Senior Account Manager in a communications department from August 2000 to October 2010.  *Id.* at 254.  Plaintiff then served in the U.S. Army for two consecutive periods—first from October 19, 2010, to May 4, 2011, and then from May 5, 2011, to January 7, 2016.  *Id.* at 155.  Her discharge was characterized as Under Honorable Conditions.  *Id.*  While in the military, Plaintiff worked as an Adjutant General Officer in a capacity she testified was the "civilian equivalent to human resources."  *Id.* at 42, 254.  Plaintiff has not worked on a full-time basis since leaving the Army.

United States District Court
Northern District of California

*Id.* at 32, 254.  She attempted to return to work on a part-time basis in September 2016 as a student aide helping special needs children in her town's school district.  *Id.* at 40, 254.  Plaintiff worked about 10 hours a week at the school until December 2016, at which point she testified she had to leave the job due to her pain.  *Id.*

Plaintiff filed for SSDI due to plantar fasciitis bilateral; sinus tarsitis; bilateral hallux limitus; right capsulitis first metatarsophalangeal joint; right boney exostosis/osteophyte; pes planus bilaterally; migraine headaches; trochanteric pain syndrome of the left hip; patellofemoral pain syndrome of the left knee; and tinnitus.  Tr. 392.  The record also shows Plaintiff was diagnosed with cervical spondylosis.  *Id.* at 746.  Plaintiff sought or received treatment for the above conditions on the following dates:  May 14, 2013 (Tr. 810); September 8, 2014 (*id.*); February 9, 2015 (*id.*); April 7, 2015 (*id.*); April 24, 2015 (*id.*); May 14, 2015 (*id.*); April 21, 2016 (*id.* at 409); May 11, 23, and 25, 2016 (*id.* at 811, 747, and 414); August 22, 2016 (*id.* at 445); October 31, 2016 (*id.* at 433); December 6, 2016 (*id.* at 527); November 8, 2018 (*id.* at 583); and November 28, 2018 (*id.* at 599).

On August 22, 2016, Dr. Nicholas Butowski conducted an examination of Plaintiff and completed multiple Disability Benefits Questionnaires based on Plaintiff's symptoms.  In his evaluation, Dr. Butowski noted Plaintiff's history of migraines, a ganglion cyst excision in her right wrist, cervical spondylosis, patellofemoral syndrome in the left knee, bursitis trochanteric of the left hip, and hallux limitus in the right big toe and right first metatarsophalangeal joint.  *Id.* at 446.  The notes indicate that Plaintiff had sought treatment over the preceding years for several of her ailments, including for the right wrist ganglion cyst, left hip chronic pain, left knee chronic pain, and hallux limitus of the right big toe.  *Id.*  Dr. Butowski wrote that Plaintiff's migraine headaches began in 2011 and occurred about every two weeks in the frontal region at a pain level of at least a 7 out of 10, making her sensitive to light and sound and sometimes nauseous.  *Id.* at 447.  The migraines typically lasted either three to four hours, but "if . . . bad" then 12–14 hours. *Id.*  Aggravating factors included light, loud sounds, and driving.  *Id.*  Plaintiff generally had a "good response" to the medication Fiorcet.  *Id.*  Dr. Butowski wrote that Plaintiff's migraine

United States District Court
Northern District of California

1   headaches impacted her ability to work because she would lose working time to the headaches or

2   have less stamina and energy when she was able to work through them, and because a sustained

3   position, such as one at a computer, could cause neck pain which would lead to a headache. *Id.* at

4   449. Dr. Butowski additionally noted Plaintiff's diagnosis of cervical spondylosis—with

5   symptoms beginning in 2013 or 2014—also impacted her ability to work because Plaintiff could

6   not sit or stand for more than 30 minutes at a time, could not commute for more than 30 minutes,

7   and could not do more than two to three repetitions of a head or neck movement without causing

8   pain. *Id.* at 451, 458.

9        The record further indicates that Plaintiff has had right wrist pain since at least February

10   2015—following the surgical removal of a ganglion cyst during which Plaintiff was told the

11   medical team had scraped some of her tendons—and that the cyst was suspected to have recurred

12   by November 8, 2018. *Id.* at 615–616. Plaintiff was unable to do pushups or lift things, and her

13   pain was aggravated by "even small repetitive . . . motions," such as "using a computer mouse or

14   typing." *Id.* at 616.

15        On October 14, 2016, the VA determined Plaintiff to have one or more service-connected

16   disabilities, with a service connection of 90%. Tr. at 155. The VA found Plaintiff to have the

17   following itemized service-connected disability ratings: 10% for left knee patellofemoral pain

18   syndrome with degenerative arthritis (effective January 8, 2016); 10% for "limitation of flexion"

19   due to left hip trochanteric pain syndrome (effective July 27, 2016); 20% for "impairment of

20   thigh" also due to left hip trochanteric pain syndrome (effective July 27, 2016); 30% for cervical

21   spondylosis; and 30% due to migraine headaches. *Id.* at 162–164. Based on these findings, the

22   VA considered Plaintiff to be "totally and permanently disabled due solely to [her] service-

23   connected disabilities," and informed Plaintiff that she was "being paid at the 100 percent rate

24   because [she was] unemployable due to [her] service-connected disabilities." *Id.* at 156.

25   **II.    LEGAL STANDARD**

26        **A.    Standard for Reviewing the ALJ's Decision**

27        Pursuant to 42 U.S.C. § 405(g), the district court has authority to review an ALJ decision.

28   Case No.: 20-cv-03751-EJD
     ORDER GRANTING PLTF.'S MSJ AND DENYING DFT.'S MSJ

United States District Court
Northern District of California

1   The court's jurisdiction, however, is limited to determining whether the denial of benefits is

2   supported by substantial evidence in the administrative record. *Id.* A district court may only

3   reverse the decision if it is not supported by substantial evidence or if the decision was based on

4   legal error. *Id.*; *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001).

5       "Substantial evidence" is more than a scintilla, but less than a preponderance. *Thomas v.

6   Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). This standard requires relevant evidence that a

7   "[r]easonable mind might accept as adequate to support a conclusion." *Vertigan*, 260 F.3d at 1049

8   (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). A court must review the record as a

9   whole and consider adverse as well as supporting evidence. *Robbins v. Soc. Sec. Admin.*, 466 F.3d

10   880, 882 (9th Cir. 2006). The court must affirm the ALJ's conclusion so long as it is one of

11   several rational interpretations of the evidence. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir.

12   2005). However, the court reviews "only the reasons provided by the ALJ in the disability

13   determination and may not affirm the ALJ on a ground upon which he [or she] did not rely."

14   *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014).

15       A court has jurisdiction over social security appeals when the plaintiff files the appeal

16   within 60 days. 42 U.S.C. § 405(g).3 The jurisdiction of federal courts, however, is limited to

17   judging whether substantial evidence was used in the denial of benefits. *Id.* The substantial

18   evidence standard is met when the record contains sufficient evidence supporting the ALJ's factual

19   conclusions. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). In other words, the court must

20   ask whether a reasonable mind, based on the evidentiary record, could reach the ALJ's

21   holding. *Id.* Further, if the evidence provided supports multiple rational interpretations, then the

22   administrative decisions reached below must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679

23   (9th Cir. 2005). However, if legal error occurred in the administrative process or if the

24   administrative decision is not supported by substantial evidence, the decision may be set

25   aside. *Treviso v. Berryhill*, 871 F.3d 664, 676 (9th Cir. 2017).

26       **B.      Standard for Determining Disability**

27       The Social Security Act defines disability as the "inability to engage in any substantial

28   Case No.: 20-cv-03751-EJD
ORDER GRANTING PLTF.'S MSJ AND DENYING DFT.'S MSJ

United States District Court
Northern District of California

1  gainful activity by reason of any medically determinable physical or mental impairment which can

2  be expected to result in death or which has lasted or can be expected to last for a continuous period

3  of not less than twelve months."  42 U.S.C. § 423(d)(1)(A).  The impairment must also be so

4  severe that a claimant is unable to do previous work, and cannot "engage in any other kind of

5  substantial gainful work which exists in the national economy," given the claimant's age,

6  education, and work experience.  42 U.S.C. § 423(d)(2)(A).

7  "The claimant carries the initial burden of proving a disability."  *Ukolov v. Barnhart*, 420

8  F.3d 1002, 1004 (9th Cir. 2005); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (observing that

9  the claimant must satisfy the burden on the first four steps of the evaluative process).  If the

10  claimant proves a prima facie case of disability, then the Commissioner has the burden of

11  establishing the claimant can perform "a significant number of other jobs in the national

12  economy."  *Thomas*, 278 F.3d at 955; *Bowen*, 482 U.S. at 146 n.5 ("[T]he Secretary bears the

13  burden of proof at step five, which determines whether the claimant is able to perform work

14  available in the national economy.").  "The Commissioner can meet this burden through the

15  testimony of a vocational expert or by reference to the Medical Vocational Guidelines at 20 C.F.R.

16  pt. 404, subpt. P, app. 2."  *Thomas*, 278 F.3d at 955.

17  The ALJ evaluates Social Security disability cases using a five-step evaluation process.  20

18  C.F.R. § 416.920.  The steps require the following analysis:

19
20  (1) The ALJ must first determine whether the claimant is presently engaged in substantially gainful activity.  20 C.F.R. § 416.920(b).  If so, the claimant is not disabled; otherwise the evaluation proceeds to step two.

21
22  (2) The ALJ must determine whether the claimant has a severe impairment or combination of impairments.  20 C.F.R. § 416.920(c).
23  If not, the claimant is not disabled; otherwise the evaluation proceeds to step three.

24  (3) The ALJ must determine whether the claimant's impairment or combination of impairments meets or medically equals the
25  requirements of the Listing of Impairments.  20 C.F.R. § 416.920(d).
26  If so, the claimant is disabled; otherwise the analysis proceeds to step four.

27  (4) The ALJ must determine the claimant's residual functional

28  Case No.: 20-cv-03751-EJD
ORDER GRANTING PLTF.'S MSJ AND DENYING DFT.'S MSJ
6

United States District Court
Northern District of California

capacity despite limitations from the claimant's impairments.   20 C.F.R. § 416.920(e).  If the claimant can still perform work that the individual has done in the past, the claimant is not disabled.  If the claimant cannot perform the work, the evaluation proceeds to step five.  20 C.F.R. § 416.920(f).

(5) In this step, the Commissioner has the burden of demonstrating that the claimant is not disabled. Considering a claimant's age, education, and vocational background, the Commissioner must show that the claimant can perform some substantial gainful work in the national economy.  20 C.F.R. § 416.920(g).

An applicant is "disabled" if their "physical or mental impairment or impairments are of such severity that [they] [are] not only unable to do [their] previous work but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).  A five-step process is used to make this determination.  20 C.F.R. §§ 404.1520(a)(4).  In steps one through four, the claimant carries the burden of proof; in step five, however, the ALJ carries the burden of proof.  *Burch*, 400 F.3d at 679.  In the fifth step, the SSA considers the applicant's residual functional capacity, age, education, and work experience to see if the applicant can "make an adjustment to other work."  If an adjustment can be made, the applicant is not disabled.  20 C.F.R. §§ 404.1520(a)(4)(v).

### C.       Standard for Evaluating Medical Opinion Evidence

Physicians fall into three categories: (1) treating physicians, (2) examining physicians, and (3) non-examining physicians.  *Lester v. Chater*, 81 F.3d 821, 830 (1995).  Treating physician opinions are accorded more weight than examining physician opinions and examining physician opinions are accorded more weight than non-examining physician opinions.  *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (citing *Lester*, 81 F.3d at 830).

Clear and convincing reasons supported by substantial evidence are required to reject an uncontradicted opinion of a treating or examining physician.  *Ryan*, F.3d at 1198 (citing *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005)).  If treating and examining physician opinions are contradicted by another physician's opinion, they may be rejected as long as there are specific and legitimate reasons supported by substantial evidence supporting the rejection.  *Ryan*, 528 F.3d at 1198 (citing *Lester*, 81 F.3d at 830).

United States District Court
Northern District of California

1    However, a contradicting opinion of a non-examining physician does not alone constitute

2    substantial evidence.  Rather, a non-examining physician must provide justification as to why they

3    rejected the decision of a treating or examining physician opinion.  *Ryan*, 528 F.3d at

4    1202 (quoting *Lester*, 81 F.3d at 831).  It is legal error to reject a medical opinion, or assign it little

5    weight, without offering a substantive basis for doing so.  *Garrison v. Colvin*, 759 F.3d 995, 1012-

6    1013 (9th Cir. 2014) (citing *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996)).

7    **III.    DISCUSSION**

8        The ALJ made the following findings and conclusions on the five steps:

9        (1) For step one, the ALJ determined that Plaintiff had not engaged in substantial gainful

10   activity since January 8, 2016;

11       (2) For step two, the ALJ determined that Plaintiff had the severe medically-determinable

12   impairments of cervical degenerative disc disease; migraine headaches; left knee patellofemoral

13   pain syndrome; status post right wrist ganglion cyst removal; left hip trochanteric pain syndrome;

14   bilateral planter fasciitis; and tinnitus;

15       (3) For step three, the ALJ found that Plaintiff did not have an impairment or combination

16   of impairments that met or medically equaled the requirements of the Listing of Impairments; and

17       (4) For step four, the ALJ made the preliminary finding that Plaintiff had the residual

18   functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) with some

19   exceptions, and then determined that Plaintiff was capable of performing past relevant work.  The

20   analysis of Plaintiff's SSDI claim, therefore, stopped at this step with the conclusion that Plaintiff

21   was not disabled.  Tr. 17–23.

22       In her motion, Plaintiff argues that (1) the ALJ did not give the requisite weight to the

23   VA's determination of disability, including to the opinion of Plaintiff's examining physician, Dr.

24   Butowski, which was a partial basis for the disability determination; (2) the ALJ erred in assessing

25   Plaintiff's credibility regarding the intensity, persistence, and limiting effects of the symptoms

26   resulting from her impairments; (3) the ALJ improperly rejected the lay witness testimony of

27   Plaintiff's husband; and (4) the ALJ's step four finding was not supported by substantial evidence.

28   Case No.: 20-cv-03751-EJD
     ORDER GRANTING PLTF.'S MSJ AND DENYING DFT.'S MSJ

1    Mot. 8–18.  The Court considers each of these arguments in turn.

2         **A.      The ALJ Did Not Give "Great Weight" to the VA's Disability Rating**

3              Plaintiff argues that the ALJ did not give "great weight" to the VA's disability rating—

4    despite the statement in the ALJ's decision that "great weight" was given to the VA medical notes

5    regarding Plaintiff's headaches, cervical pain, commuting limitations, and other movement

6    limitations—and did not provide "persuasive, specific, and valid" reasons for rejecting the rating.

7    Mot. 8–11; Tr. 21.  The Commissioner asserts that the ALJ "correctly explained that the VA rating

8    was not binding because it is not based on Social Security criteria."  Opp. 3.

9              "[T]he ALJ must consider the VA's finding in reaching his decision and the ALJ must

10   ordinarily give great weight to a VA determination of disability."  *Luther v. Berryhill*, 891 F.3d

11   872, 876 (9th Cir. 2018) (quoting *McLeod v. Astrue*, 640 F.3d 881, 886 (9th Cir. 2011)).  The

12   Ninth Circuit concluded that "great weight" was to be accorded to VA disability determinations

13   "because of the marked similarity between these two federal disability programs, which] serve the

14   same governmental purpose—providing benefits to those unable to work because of a serious

15   disability."  *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002).  Although an ALJ is

16   "not compelled to adopt the conclusions of the VA's decisions wholesale," "if she deviates from

17   final VA decisions, she may do so based only on contrary evidence that is 'persuasive, specific,

18   valid' and supported by the record."  *Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012)

19   (citations omitted); *see also Schiaffino v. Saul*, 799 F. App'x 473, 476 (9th Cir. 2020) ("An ALJ

20   may only discount a VA disability rating 'if he gives persuasive, specific, valid reasons for doing

21   so that are supported by the record.") (citations omitted).

22             Here, the ALJ did not give "great weight" to the VA's disability rating and did not provide

23   "persuasive, specific, valid reasons" for discounting the rating.  The ALJ addressed the weight

24   given to the VA records only as to the medical notes from Dr. Butowski's examination, stating

25   that "[t]hese opinions are given great weight and are consistent with the record as a whole."  Tr.

26   21.  Regarding the VA's disability rating itself, the decision states:

27                    The undersigned is mindful that the claimant has been found disabled
                     by the Veteran's Administration.  Notes stated that the claimant had

28   Case No.: 20-cv-03751-EJD
     ORDER GRANTING PLTF.'S MSJ AND DENYING DFT.'S MSJ

9

a combined service connected disability of 90% (Exhibit 4F/30). However, the Social Security Administration makes determinations of disability according to Social Security law. Therefore, a determination of disability by another agency is not binding on this proceeding.

*Id.* The decision cites to consultation notes from an outpatient visit mentioning Plaintiff's 90% service connected disability rating. *See id.*; *id.* at 601. The decision addresses neither the substantial record evidence describing the VA's reasoning for its disability rating, nor the official record of Plaintiff's VA entitlement, which states that Plaintiff is "being paid at the 100 percent rate because [she is] unemployable due to [her] service-connected disabilities" and is "considered to be totally and permanently disabled due solely to [her] service-connected disabilities." *See id.* at 155–156, 184–196.

The ALJ's reasoning is not consistent with Ninth Circuit law. It is true that a VA rating is not binding in that it "does not necessarily compel the SSA to reach an identical result." *Luther*, 891 F.3d at 876. However, the ALJ did not provide "persuasive, specific, valid reasons" for reaching a different conclusion as to Plaintiff's disability status. The only reason given—that the SSA and VA have different systems—is not valid. *Underhill v. Berryhill*, 685 F. App'x 522, 522 (9th Cir. 2017) (citing *Berry v. Astrue*, 622 F.3d 1228, 1236 (9th Cir. 2010)). As in *Luther*, the ALJ "noted [Plaintiff's] VA disability rating . . . in her written decision, [but] she did not address how she had considered and weighed the VA's rating or articulate any [valid] reasons for rejecting it." 891 F.3d at 877. In fact, given the "great weight" the ALJ assigned to the VA's medical opinion evidence regarding the limitations caused by Plaintiff's impairments—evidence that the ALJ's written decision clearly separates from the VA's disability rating—it was even more incumbent upon the ALJ to provide persuasive, specific, and valid reasons for discounting the disability rating. The Commissioner argues that the ALJ properly discounted the VA rating because she had evidence unavailable to the VA in the form of two state agency physicians who opined Plaintiff was capable of light work. Opp. 3–4. However, the ALJ's written decision clearly separates the discussion of the VA's disability rating from that of the state agency physicians. Tr. 21. The ALJ therefore erred because she did not give great weight to the VA

1   disability rating and did not provide any persuasive, specific, and valid reasons for rejecting it.

2   *See, e.g.*, *Luther*, 891 F.3d at 877; *Hiler*, 687 F.3d at 1212.

3   **B.     The ALJ Erred in Assessing Plaintiff's Credibility**

4        The ALJ determined that Plaintiff's "statements about the intensity, persistence, and

5   limiting effects of her symptoms[] are inconsistent because she testified she had issues with her

6   knees and hips, but there was no evidence an assistive device was used."  Tr. 20.  The ALJ further

7   found that the medical notes in the record indicated that Plaintiff had recently moved and

8   "reno[vated] a house," liked horseback riding, ran for exercise in April 2016, worked on a farm,

9   and had five dogs and chickens."  *Id.*  Additionally, the ALJ noted that Plaintiff did not take

10  preventative medication for her migraine headaches even though she described them as disabling.

11  *Id.* at 21.  Plaintiff argues that the ALJ improperly rejected Plaintiff's symptom testimony as

12  inconsistent with the objective medical evidence of Plaintiff's limitations.  Mot. 12–14.  The

13  Commissioner asserts that the ALJ properly considered Plaintiff's testimony and pointed to

14  specific treatment notes as contradicting Plaintiff's account of her symptoms.  Opp. 7–11.

15       The ALJ must engage in a two-step analysis when evaluating a claimant's credibility.

16  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007).  First, the ALJ determines

17  "whether the claimant has presented objective medical evidence of an underlying impairment

18  which could reasonably be expected to produce the pain or other symptoms alleged."  *Id.* at 1036

19  (internal quotations omitted).  Second, if the claimant has met the first step and there is no

20  evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her

21  symptoms only by offering specific, clear and convincing reasons for doing so."  *Id.* (internal

22  quotations omitted); *Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014); *Garrison*, 759 F.3d at

23  1014–15.  An ALJ must "specify which testimony she finds not credible, and then provide clear

24  and convincing reasons, supported by evidence in the record, to support that credibility

25  determination."  *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015).  "This is not an easy

26  requirement to meet:  'The clear and convincing standard is the most demanding required in Social

27  Security cases.'"  *Garrison*, 759 F.3d at 1015 (citation omitted).

28  Case No.: 20-cv-03751-EJD
    ORDER GRANTING PLTF.'S MSJ AND DENYING DFT.'S MSJ
    11

United States District Court
Northern District of California

1    Here, the ALJ found under the first step of the credibility assessment that Plaintiff's

2  "medically determinable impairments could reasonably be expected to cause the alleged

3  symptoms."  Tr. 20.  The ALJ made no finding that there had been any evidence of malingering.

4  *See id.* at 20–21.  Therefore, in order to reject Plaintiff's testimony regarding the severity of her

5  symptoms under the second step, the ALJ was required to provide "specific, clear and convincing

6  reasons for doing so."  *Lingenfelter*, 504 F.3d at 1036.

7    The ALJ failed to meet this standard.  First, the written decision mentions Plaintiff's

8  "issues with her knees and hips" and "complaints of allegedly disabling symptoms from her

9  headaches," but does not "specifically identify what testimony is credible" and not credible.  Tr.

10 20–21; *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).  For example,

11 Plaintiff testified that "[m]y knee bothers me the most when I'm in a consistent position like right

12 now where it's consistently just bent . . . so I can just kind of pace around a little bit, but if I were

13 to try to go walk like over a block, it [] starts having a lot of pain in both my hip and my knee."

14 Tr. 39.  Regarding her migraine headaches, Plaintiff testified in part that the headaches cause a

15 "throbbing pain" that "affect[] [her] having any energy" and her "ability to concentrate[e] and

16 carry[] on a conversation."  Tr. 35.  Because the ALJ did not specify which elements of Plaintiff's

17 testimony about her knee, hip, and migraine headaches she found not credible and why, the written

18 opinion provides only a "high-level [description of] the difficulties that Plaintiff claims her

19 symptoms have caused."  *Estrada v. Berryhill*, No. 5:16-cv-06998, 2018 WL 1400460, at *5 (N.D.

20 Cal. Mar. 19, 2018).  As such, the ALJ's assessment amounts to a general finding regarding

21 Plaintiff's credibility, which is insufficiently specific under Ninth Circuit law.  *Id.*

22    Second, the ALJ's stated reasons for doubting Plaintiff's credibility are not "specific, clear

23 and convincing" and supported by the record.  The ALJ rejected Plaintiff's testimony on two

24 grounds: (1) Plaintiff's testimony about the severity of her migraine headaches was inconsistent

25 with the fact that she did not take preventative medication for the headaches; and (2) Plaintiff's

26 testimony regarding her knee and hip pain was inconsistent with the facts that Plaintiff did not use

27 an assistive device and participated in certain activities.  Tr. 20–21.  The record does not support

28

Case No.: 20-cv-03751-EJD
ORDER GRANTING PLTF.'S MSJ AND DENYING DFT.'S MSJ

1    either reason.  Plaintiff testified that her headaches cause a "throbbing pain" that "takes over

2    everything else" so that she feels "like I can't focus and I can't talk." *Id.* at 35, 38.  She explained

3    that she takes medication "if I absolutely have to" but otherwise "just tr[ies] to sit in a dark room,

4    laying on the bed until it fades a bit" because she "[didn't] want to be drugged up on medicine

5    every day." *Id.* at 36.  That Plaintiff does not take preventative medication daily is not

6    inconsistent with her testimony regarding her pain.

7           There is also no inconsistency with Plaintiff's description of her knee and hip pain.

8    Plaintiff does not use an assisted device, but this is entirely consistent with Plaintiff's testimony

9    that her knee is most painful when "it's consistently just bent" but that she "can just kind of pace

10   around a little bit." Tr. 39.  The ALJ also pointed to a medical note from April 2016 indicating

11   that Plaintiff ran for exercise. *Id.* at 20.  Plaintiff testified at the hearing that she ran marathons

12   when she was in the military, stopped running about six months before January 2016 due to her

13   pain, but attempted to start training again when she left the military in January 2016. *Id.* at 45.

14   Plaintiff stated that she "tried for about three months, and . . . was trying to just take meds and get

15   through the pain and . . . decided [she] still wanted to walk by the time [she] was 50" and then

16   stopped. *Id.*  Again, this testimony is consistent with Plaintiff telling a health provider that she ran

17   in April 2016.  Lastly, the ALJ found inconsistent medical notes indicating that Plaintiff had

18   recently moved, renovated a house, liked horseback riding, worked on a farm, and had five dogs

19   and chickens.  There is no evidence in the record that Plaintiff rode a horse at any time following

20   the alleged onset of her disability.  As for the other items, ALJs must be "especially cautious in

21   concluding that daily activities are inconsistent with testimony about pain, because impairments

22   that would unquestionably preclude work and all the pressures of a workplace environment will

23   often be consistent with doing more than merely resting in bed all day." *Garrison*, 759 F.3d at

24   1016.  Plaintiff testified that she does "light housework" but is forced to leave tasks like folding

25   laundry or washing dishes incomplete due to the pain, so that she performs a task "for a little bit,

26   and then I'll go off and kind of take a break and sit and rest." Tr. 47–48.  Her husband and

27   daughter help her with things like shopping, lifting heavy items, and cooking. *Id.* at 47, 49.  She

28

1    has to lay down for hours at a time.  *Id.* at 39.  The activities identified by the ALJ are consistent

2    with the pain that Plaintiff described in her testimony, and with Plaintiff's inability to function in a

3    workplace environment.  *See Garrison*, 759 F.3d at 1016.

4         The overarching issue with the ALJ's credibility determination is that she did not

5    sufficiently develop the record to make a "specific, clear and convincing" adverse credibility

6    determination.  The ALJ did not ask whether Plaintiff rode a horse recently, or how Plaintiff

7    participated in moving homes, renovating her home, and caring for dogs and chickens.  *See* Tr.

8    28–60.  The sparse record on these issues may owe to the ALJ's stated hurry due to an upcoming

9    meeting, which resulted in a hearing lasting only 39 minutes.  *Id.* at 30, 60; *see Tonapetyan v.*

10   *Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) ("The ALJ in a social security case has an

11   independent 'duty to fully and fairly develop the record and to assure that the claimant's interests

12   are considered.'") (citations omitted).

13       **C.**    **The ALJ Improperly Gave "Little Weight" to Plaintiff's Spouse's Statement**

14        The ALJ noted that Plaintiff's husband, Mr. Werts, provided a statement that was

15   "generally supportive of [Plaintiff's] allegations" about her limitations, but gave the statement

16   "little weight" because "Mr. Werts is not medically trained to make exacting observations as to

17   dates, frequencies, types and degrees of medical signs and symptoms, or of the frequency or

18   intensity of unusual moods or mannerisms."  Tr. 21.  Plaintiff asserts that the ALJ erred in

19   discounting Mr. Werts's statement because he was a lay witness describing how Plaintiff's

20   impairments affected her ability to perform daily activities, rather than making medical

21   observations requiring medical expertise.  Mot. 15–16.  The Commissioner contends that the ALJ

22   properly noted Mr. Werts's lack of medical training and consistently rejected both Plaintiff's

23   testimony and Mr. Werts's statement, and that any error in rejecting duplicative testimony was at

24   most harmless.  Opp. 11–12.

25        The Court agrees with Plaintiff.  "Lay testimony as to a claimant's symptoms is competent

26   evidence that an ALJ must take into account, unless he or she expressly determines to disregard

27   such testimony and gives reasons germane to each witness for doing so."  *Diedrich v. Berryhill*,

28

United States District Court
Northern District of California

1    874 F.3d 634, 640 (9th Cir. 2017) (quoting *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001)).

2    That a lay witness's observations are not supported by the medical record or are otherwise not

3    equivalent to a medical opinion is not a germane reason for giving those observations "little

4    weight." *Id.* ("The fact that lay testimony and third-party function reports may offer a different

5    perspective than medical records alone is precisely why such evidence is valuable at a hearing.");

6    *see also Bruce v. Astrue*, 557 F.3d 1113, 1116 (9th Cir. 2009) ("A lay person, [claimant's] wife,

7    though not a vocational or medical expert, was not disqualified from rendering an opinion as to

8    how her husband's condition affects his ability to perform basic work activities."). Rather,

9    "testimony from lay witnesses who see the claimant every day is of particular value." *Smolen v.*

10   *Chater*, 80 F.3d 1273 (9th Cir. 1996) (citations omitted). And because the Court has concluded

11   that the ALJ erred in rejecting Plaintiff's testimony, that rejection is therefore not a germane

12   reason to reject similar or duplicative lay witness testimony. *Cf. Valentine v. Comm'r Soc. Sec.*

13   *Admin.*, 574 F.3d 685, 693–93 (9th Cir. 2009); Opp. 11.

14        Here, Mr. Werts's statement described Plaintiff's everyday limitations. In his responses to

15   the questionnaire, Mr. Werts wrote that Plaintiff experiences "really bad migraines and her neck

16   gets so painful" when, for example, she spends too much time in the car. Tr. 238. He confirmed

17   that Plaintiff "has to . . . do things at her own pace or her feet, hips, and hand starts acting bad."

18   *Id.* During the day, Plaintiff does "very light housecleaning" and "spends time with our dogs and

19   chickens, and starts dinner until the kids come home to help her." *Id.* at 239. Plaintiff's care for

20   the family pets consists of "feed[ing] them and giv[ing] them love" because "she can't carry heavy

21   things"—it is Mr. Werts and other family members who "carry out the big feed bags and fill the

22   water buckets." *Id.* In response to a question asking which of several items were affected by

23   Plaintiff's impairments, Mr. Werts checked the following: lifting, squatting, bending, standing,

24   reaching, walking, sitting, kneeling, stair climbing, seeing, completing tasks, concentration, and

25   using hands. *Id.* at 243. Without any germane reason to discount Mr. Werts's statement, the ALJ

26   erred in giving it "little weight."

27

28

**D.     The ALJ's Step-Four Finding is Not Supported by Substantial Evidence**

Lastly, Plaintiff argues that the ALJ erred in finding that Plaintiff could return to her past relevant work because that finding was based on an incomplete hypothetical posed by the ALJ to the vocational expert because the hypothetical omitted evidence from the VA, Plaintiff, and Mr. Werts.  Mot. 16–18.  Plaintiff additionally notes that the role of Sales Service Supervisor— deemed by the ALJ to meet Plaintiff's residual functional capacity (RFC) of light work with certain limitations—is listed in a Department of Labor's O*Net database as requiring repetitive motions beyond the limitations of the RFC.  *Id.* at 17.  The Commissioner argues in turn that the ALJ properly excluded from her hypothetical questions the limitations she found unsupported by the record, and that the ALJ had no duty to evaluate any source of work descriptions other that the Dictionary of Occupational Titles (DOT).  Opp. 12–13.  As noted by the Commissioner, Plaintiff's argument is based on the premise that the ALJ's RFC assessment was not supported by substantial evidence.  *Id.* at 12; *see* Mot. 10 ("The ALJ did not try to explain why the[] limitations [described by the VA records] were not included in the RFC finding.")

The Court finds that the errors described above with respect to the VA rating, Plaintiff's allegations, and Mr. Werts's statement infected the ALJ's analysis of Plaintiff's RFC and the hypotheticals posed to the vocational expert.

The ALJ found Plaintiff to have the RFC to perform "light work . . . except she can stand and/or walk for 4 hours in an 8-hour workday[,] would need to avoid concentrated noise and have no repetitive head movements defined as constant movement[,] can frequently handle and finger on the right dominant side[, and] would need to alternate positions every 30 minutes."  Tr. 18.  An RFC determination refers to what the claimant "can still do despite existing exertional and nonexertional limitations."  *Cooper v. Sullivan*, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).  It describes a claimant's "ability to meet the physical, mental, sensory, and other requirements of work."  20 C.F.R. § 404.1545(a)(4).  An ALJ properly determines a claimant's RFC by "considering all relevant evidence in the record, including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a

1    medically determinable impairment.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir.

2    2006).  "[A]n RFC that fails to take into account a claimant's limitations is defective." *Valentine*,

3    574 F.3d 685, 690 (9th Cir. 2009).

4           Here, the record shows a VA disability rating of 90%, with payment to Plaintiff at a 100%

5    rate because the VA has determined Plaintiff to be "unemployable" and "totally and permanently

6    disabled due solely to [her] service-connected disabilities." Tr. 155–156, 184–196.  Additionally,

7    Plaintiff and Mr. Werts described Plaintiff's limitations, including that she often has to lie down in

8    a dark room for hours at a time. Tr. 36, 39, 240.  The ALJ did not provide sufficient reasons to

9    discount this evidence—especially the VA disability rating, which is entitled to "great weight"—

10   and the RFC is therefore not supported by substantial evidence.

11          Further, the ALJ's hypothetical improperly omitted several of Plaintiff's limitations and

12   restrictions.  For example, the ALJ did not include in her hypothetical that Plaintiff frequently

13   needs to lie down in a dark room with no noise, or to leave tasks unfinished until she recovers

14   from pain.  *See* Tr. 36, 39, 48, 54–56.  The ALJ posed a hypothetical asking whether Plaintiff

15   could perform light work if she were off task 15% of the workday or consistently absent three or

16   more times a month, to which the vocational expert opined that Plaintiff would not be able to

17   work.  *Id.* at 56.  It is clear from the written decision that the ALJ did not rely on this last

18   hypothetical in finding Plaintiff capable of past relevant work, but the ALJ provides no reasoning

19   that would reconcile her decision with the evidence from the VA, Plaintiff, and Mr. Werts.  The

20   incomplete hypotheticals may have been due to the ALJ's stated lack of time during the hearing,

21   *id.* at 30, but Plaintiff may not be punished for this entirely external factor.  Thus, on remand, the

22   ALJ must not only re-evaluate the RFC itself but also pose hypothetical questions to the

23   vocational expert based on the entirety of Plaintiff's limitations as supported by substantial

24   evidence in the record.[2]

25

26

27   [2] The Court need not and does not address Plaintiff's argument regarding the O*Net database
     because it bases on other grounds its holding that the ALJ's step four analysis was not supported
     by substantial evidence.

28   Case No.: 20-cv-03751-EJD
     ORDER GRANTING PLTF.'S MSJ AND DENYING DFT.'S MSJ
                                    17

## IV.     ORDER

Based on the foregoing, Plaintiff's Motion for Summary Judgment (ECF No. 18) is GRANTED and the Commissioner's Motion for Summary Judgment (ECF No. 19) is DENIED.

The Commissioner's final decision is REVERSED and this case is REMANDED for further administrative proceedings consistent with this order.  *See Garrison*, 759 F.3d at 1019 ("[I]f additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded.").

Judgment will be entered in favor of Plaintiff and the Clerk shall close this file.

**IT IS SO ORDERED.**

Dated: March 3, 2023

EDWARD J. DAVILA
United States District Judge